UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| DOYLE PRICE d/b/a ON SITE CONSTRUCTION, and ANTONIO SOUSA, | * | |
| | * | |
| | * | Civil Action No. 1:15-cv-12889-IT |
| | * | |
| Defendants, | * | |
| | * | |
| v. | * | |
| | * | |
| P.J. LOMBARDO INSURANCE AGENCY, INC., | * | |
| | * | |
| | * | |
| Third Party Defendant. | * | |

MEMORANDUM & ORDER

July 26, 2016

TALWANI, D.J.

I.     Introduction

    Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty") seeks a declaration

that it has no duty to defend or indemnify Defendant Doyle Price ("Price") in connection with a

personal injury action that Defendant Antonio Sousa ("Sousa") is litigating against Price.

Presently before the court is Atlantic Casualty's Motion for Summary Judgment [#24]. For the

reasons set forth below, the motion is ALLOWED.

II.     Factual and Procedural Background

    Price is the sole proprietor of the construction business that operates as "Onsite

Construction." Pl.'s Statement Undisputed Material Facts Supp. Mot. Summ. J. ¶ a [#26] ("Pl.'s

Facts"). Price was hired as the general contractor for the demolition and construction of a home in Winchester, Massachusetts. Id. ¶ b. Price subcontracted, via oral agreement, with insulation company Anderson Insulation to work on the home. Id. Sousa, one of Anderson Insulation's employees, was injured while working on the site. Id.  ¶¶ c, d.  Sousa has filed a complaint in state court against Price, alleging that Price was negligent in not ensuring the safety of the workplace. See Compl. Ex. 1 [#1-1].

Atlantic Casualty is an out-of-state insurance company. Pl.'s Facts Ex. 1 80 [#26-1] (Price Dep.). Atlantic Casualty provided general liability insurance to OnSite Construction. See Pl.'s Facts Ex. 5 [#26-5] (Atlantic Casualty Insurance Policy). Atlantic Casualty asserts that Price has requested a defense and indemnification under the insurance contract for Sousa's state court action. See Pl.'s Facts Ex. 1 32 [#26-1] (Price interrogatory response in underlying personal injury action stating that he is covered under an insurance policy for the satisfaction of any judgment in that action). Atlantic Casualty claims that Sousa's injury is not covered under OnSite Construction's policy due to an endorsement to the policy titled "Exclusion of Injury to Employees, Contractors and Employees of Contractors." See Pl.'s Facts Ex. 5 36 [#26-5].

Atlantic Casualty filed this declaratory judgment action on July 3, 2015, naming both Price and Sousa as defendants. See Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 274 (1941) (finding that an action brought by an insurance company seeking declaratory relief against the insured and an injured party contained an actual controversy between the parties). Atlantic Casualty's complaint seeks a declaration that it has no duty to defend or indemnify Price and a declaration that Sousa is bound by that first declaration. See Compl. 6 [#1]. Sousa, in turn, seeks a declaration that third party defendant P.J. Lombardo Insurance Agency, Inc. ("PJ

Lombardo"), seeking a declaration that PJ Lombardo is also bound by any judgment, order, or declaration applicable to Sousa. Sousa Amended Answer & Third Party Claim 9 [#15].

Atlantic Casualty now moves for summary judgment that it has no duty to defend or indemnify Price. Pl.'s Mot. Summ. J. [#24]. Sousa opposes Atlantic Casualty's motion. Price has been served but has not answered the complaint or responded to the motion. PJ Lombardo has answered the cross-complaint but has filed no response to Atlantic Casualty's motion.

III.    Summary Judgment Standard

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists if an issue can be resolved in favor of either party. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). Facts are material if they have the potential to affect the outcome of the case.  Id.

IV.    Discussion

The facts here are not in dispute. Atlantic Casualty and Sousa do, however, dispute both the construction of the policy and the endorsement at issue, and the enforceability of the policy to the extent it excludes coverage for Sousa's injuries. The court first construes the policy and then reaches the parties' enforceability arguments.

A.  Construction of the Policy and Endorsement

Atlantic Casualty argues that Sousa's claim against Price is not covered by Price's policy, due to the endorsement titled "Exclusion of Injury to Employees, Contractors and Employees of Contractors" (the "Employee and Contractor Endorsement"). That endorsement provides:

This insurance does not apply to:

i.    "Bodily injury" to any "employee" of any insured arising out of or in the course of:

    a.   Employment by any insured; or

    b.   Performing duties related to the conduct of any insured's business;

ii.    "Bodily injury" to any "contractor" for which any insured may become liable in any capacity; or

iii.   "Bodily injury" sustained by any spouse, child, parent, brother or sister of any "employee" of any insured, or of a "contractor", as a consequence of any injury to any person as set forth in paragraphs (i) and (ii) of this endorsement.

This exclusion applies to all claims and "suits" by any person or organization for damages because of "bodily injury" to which this exclusion applies including damages for care and loss of services.

This exclusion applies to any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to which this exclusion applies, including any obligation assumed by an insured under any contract.

With respect to this endorsement only, the definition of "Employee" in the **SECTION V – DEFINITIONS** is replaced by the following:

"Employee" shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.

As used in this endorsement, "contractor" shall include, but is not limited to, any independent contractor or subcontractor of any insured, any general contractor, any developer, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein.

Pl.'s Facts Ex. 5 36 [#26-5].

Sousa nevertheless contends that the policy and endorsement are ambiguous and that the ambiguities must be construed against the insurance provider. See Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 871 N.E.2d 418, 425 (Mass. 2007). An insurance

contract is considered ambiguous if the "language is susceptible to more than one rational interpretation." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4-5 (1st Cir. 2000).

Neither the Employees and Contractors Endorsement nor the policy as a whole are ambiguous. First, the endorsement begins with a clear title indicating the nature of the exclusion, and the portion of the policy that it replaces. The body of the endorsement provides, in relevant part, that the policy shall not apply to "'bodily injury' to any 'contractor' for which any insured may become liable in any capacity." Pls.' Facts Ex. 5 36 [#26-5]. Within the endorsement, "contractor" is defined to include "any independent contractor or subcontractor of any insured," as well as "any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein." Accordingly, on its face, the endorsement excludes coverage for injuries to employees who "work[] for" Price's subcontractors, among other things. Sousa does not suggest an alternative interpretation.

Second, while the policy as a whole contains a multitude of endorsements, some of which speak to the same aspect of coverage, mere complexity of a policy is not itself a basis for finding ambiguity.  Sullivan v. Southland Life Ins. Co., 854 N.E.2d 138, 142 (Mass. App. Ct. 2006) (asserting that a difficulty in comprehending the policy does not mean that it is ambiguous). Indeed, courts recognize that because "reading and understanding an insurance policy's provisions as to coverages, exclusions, and exceptions is often a formidable task, difficulty in comprehension does not equate with ambiguity."  Mass. Props. Ins. Underwriting Ass'n v. Wynn, 806 N.E.2d 447, 450 (Mass. App. Ct. 2004).  Therefore, the number and seeming complexity of the endorsements is not a cause of ambiguity.

Sousa suggests that the policy is ambiguous due to the interplay of the Employees and Contractors Endorsement with the endorsements titled "Exclusion – Independent Contractors or Subcontractors" (the "Independent Contractor Endorsement") and "Subcontractors – Definition of Adequately Insured" (the "Adequately Insured Endorsement"). The Employees and Contractors Endorsement eliminates coverage for bodily injury for the large majority of workers, as indicated in the endorsement's title. The Independent Contractor Endorsement limits claims based on actions of an independent contractor, stating:

> This insurance does not apply to any claims, loss, costs or expense arising out of or related to the action(s) or inaction(s) of independent contractors or subcontractors by or on behalf of any insured; or for the negligent hiring, training, supervision, direction, inspection, investigation, management or retention of independent contractors or subcontractors on behalf of any insured.

Pl.'s Facts Ex. 5 72 [#26-5]. The Adequately Insured Endorsement in turn lists criteria that any contractor or subcontractor must meet in order to be considered "adequately insured" and provides that if such criteria are met, the exclusion of Independent Contractor Endorsement, as quoted above, is deleted from the policy. Id. at 73.

The import of these three endorsements, as they interact with one another, is that the Employees and Contractors Endorsement relied on by Atlantic Casualty excludes coverage for injury to most types of workers on a job site. Id. at 36. Meanwhile, the Independent Contractor Endorsement excludes coverage for all types of "claims, loss, costs or expense" arising from the actions of the insured's contractors.  Id. at 72. There may certainly be some overlap in the exclusions here, but that overlap is in no way irreconcilable.  See Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 68 (1st Cir. 2012) (stating that with insurance policies' common "use of both belts and suspenders," some overlap is expected and that the exclusions must be given effect). Finally, the Adequately Insured Endorsement, if fulfilled,

merely deletes the Independent Contractors Endorsement, but otherwise leaves the Employees and Contractors Endorsement intact.  Thus, while such an interpretation may be complex, it is not susceptible to multiple meanings and therefore not ambiguous.

Sousa also suggests that the Employees and Contractors Endorsement's definition of "employee" contradicts other definitions within the policy, thus creating confusion. Specifically, Section V of the policy, the definitions section, defines "employee" to include a "leased worker," but not a "temporary worker." Pl.'s Facts Ex. 5 30 [#26-5]. However, the Employees and Contractors Endorsement states that "*with respect to this endorsement only*, the definition of 'Employee' in the Section V – Definitions is replaced by the following[.]" Id. at 36 (emphasis added). The endorsement then goes on to list the new definition for the term "employee." Sousa argues that this change, compounded by additional definitions for "Leased Worker" and "Temporary Worker" within the initial definitions section, creates an ambiguity.

There is no such ambiguity. The endorsement specifically states that it replaces the policy's previous definition of "Employee." Further, the endorsement provides a complete new definition, with no indication that the reader should look to other definitions within the policy for supplementation.

Finally, Sousa argues that the endorsement's definition of "contractor" is ambiguous because the endorsement's definition of "contractor" exceeds sixty words and uses the word "contractor" itself six times. However, wordiness on its own does not cause ambiguity.  See Sutherland v. NN Inv'rs Life Ins. Co., Inc., 897 F.2d 593, 595 (1st Cir. 1990) (giving little weight to the fact that the exclusion was a "run-on, wordy sentence," especially when the exclusion itself gave notice that there were many exceptions). This is especially true here, where

the definition is long because it is listing a number of people included within the definition. The definitions within the endorsement are therefore also not ambiguous.

Accordingly, the unambiguous language of the policy and the Employees and Contractors Endorsement excludes coverage for injuries to employees of Price's contractors and subcontractors. The undisputed facts here are that Anderson Insulation was Price's subcontractor and Sousa was Anderson Insulation's employee. Sousa's claims therefore fit within the plain meaning of the claims excluded by the Employee and Contractor Endorsement and are not covered by the policy.

### B.  Public Policy Arguments

Sousa further argues that, even if the policy is clear and unambiguous, the exemption is unenforceable as contrary to public policy for two reasons: (1) the policy is misleading; and (2) the exclusions render the policy without substantial economic value. Although these issues might be better raised by Price (the insured), the court nevertheless finds them to be without merit.

#### 1.  Misleading Policy

Sousa first argues that the policy read as a whole, with its many endorsements that each "change the policy," is misleading, that therefore the "objectively reasonable insured" would not understand what the policy covers, and that as a matter of public policy, misleading insurance contracts "must be limited to avoid unconscionable results." Cody v. Conn. Gen. Life Ins. Co. 439 N.E.2d 234 (Mass. 1982), on which Sousa relies, does suggest that Massachusetts public policy requires that an insurance contract not be misleading. See id. at 239. However, as Atlantic Casualty notes, Cody did not address whether the content of a policy could render it misleading as Sousa contends.[1] Instead, the Cody court suggested that a contract could be found to be

---

[1] The Cody decision is also factually distinguishable as it involved a coordination-of-benefits clause in a group insurance contract. 439 N.E.2d at 235.

misleading based upon the insurer's advertising techniques. Id. at 239 (stating that "a company's marketing techniques may make even a totally unambiguous insurance contract misleading"). Other decisions applying Massachusetts law have similarly addressed potentially misleading marketing techniques. Mitcheson v. Izdepski, 585 N.E.2d 743, 745 (Mass. App. Ct. 1992) (asserting that the marketing techniques did not make the contract misleading); O'Connell v. Prudential Ins. Co. of Am., Civ. A. No. 82-3078-Z, 1984 WL 14109, at *3 (D. Mass Nov. 15, 1984) (finding that the marketing documents contained enough information for the insured to evaluate the plan); Kates v. St. Paul Fire and Marine Ins. Co., 509 F. Supp. 477, 491 (D. Mass. 1981) (finding that the marketing of the plan as including "lifetime" coverage made the plan misleading). Sousa points to nothing misleading in the marketing or advertising of the policy.

Sousa further argues that the contract is misleading because "an objectively reasonable insured" would not be able to understand the scope of the policy. Sousa points to no case finding a policy void under Massachusetts law for being misleading based upon the language of the policy itself. The court in Mitcheson did address whether the content of the coverage provisions made the policy misleading, but found that where the certificate clearly indicated that the coverage was subject to later exclusions that were clearly marked, the coverage provisions were not misleading. 585 N.E.2d at 745; see also id. ("The fact that the page upon which both the liability coverage and the exclusion appear is one among many in a complex policy does not of itself mislead or create ambiguity.") Likewise here, the policy includes a "Schedule of Forms and Endorsements" which lists each of the endorsements that applies to the policy. SeePl.'s Facts Ex. 5 5 [#26-5]. Moreover, the Employees and Independent Contractors Endorsement includes a title describing the general nature of the endorsement. Id. at 36. The Endorsement explicitly states that it replaces a clearly identified section of the policy. Id. at 36.

While this "reasonable expectations" doctrine is not usually invoked in conjunction with an assertion that a contract is void because it is misleading, courts do sometimes look to "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered" when interpreting a contract. Metro. Life Ins. Co. v. Cotter, 984 N.E.2d 835, 844 (Mass. 2013) (quoting Hazen Paper Co. v. U.S. Fid. & Guar. Co., 555 N.E.2d 576, 583 (Mass. 1990)). Even then, however, in order for a court to consider what the "objectively reasonable insured" would expect to be covered, there must be some doubt about what those expectations would be or ambiguity in the plain language of the contract. See Bos. Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 305 (Mass. 2009) (asserting that courts only consider reasonable expectations when they are "in doubt"); see also U.S. Liab. Ins. Co. v. Benchmark Constr. Servs., Inc., 797 F.3d 116, 120 (1st Cir. 2015) (stating that where there is no ambiguity the insured can have no contrary reasonable expectations); Cotter, 984 N.E.2d at 844 (stating that reasonable expectations are looked to when the contract language is unclear). Indeed, "a party can have no reasonable expectation of coverage when that expectation would run counter to the unambiguous language of an insurance policy." Clark Sch. for Creative Learning, Inc. v. Phila. Indem. Ins. Co., 734 F.3d 51, 57 (1st Cir. 2013). For that reason, even where the expectations of a reasonable insured may be taken into account in interpreting a contract, the court "may not read into the provision a condition or language that is not present." Brazas Sporting Arms, Inc., 220 F.3d 1 at 6.

Here, because the court has found the policy and endorsement unambiguously exclude the injury here, there is no basis for finding that an objectively reasonable insured would expect to be covered by this policy.

### 2.   *Policy Without Substantial Economic Value*

Sousa next argues that Atlantic Casualty's policy is void as against public policy because it is without substantial economic value. Sousa points to Mass. Gen. Laws ch. 175, § 110E, which directs the Commissioner of Insurance to make rules governing minimum standards for "policies of accident and sickness insurance which provide medical, surgical, or hospital expense benefits . . . ." Atlantic Casualty responds that the general liability policy here does not fall within the explicit scope of this statute.  However, the court in Kates, finding a similar problem, noted that:

> in the absence of grounds for distinction between 'individual' and 'general' or 'blanket' policies, or between 'medical, surgical, or hospital expense benefits' and other accident insurance benefits, that bear on needs for regulation such as section 110E addresses, *a court may look to that section and the regulations promulgated thereunder for whatever guidance they may provide, by way of analogy, regarding the public policy of Massachusetts.*

Kates, 509 F. Supp. at 489-90 (emphasis added). Thus, while the current case may not fall directly under § 110E, the statute's provisions may be applied to the contract by way of analogy.

Specifically, Mass. Gen. Laws ch. 174, § 110E(e) permits the commissioner to establish rules that bring about "elimination of coverages which are so limited in scope as to be of no substantial economic value to the holders thereof." Sousa asserts that the correct standard under which to evaluate this contract is whether the contract is without "substantial economic value." While this standard has only been applied in Massachusetts a handful of times, and does not appear to have been applied since 1990, see Sutherland, 897 F.2d at 595, courts have held that "the determination of whether the contract is without substantial economic value is similar to an examination of the substantive unconscionability of a contract." Cody, 439 N.E.2d at 239. Specifically, "[a] court must determine whether the contract terms are unreasonably favorable to one party." Id. (citing Zapata v. Dairy Mart, Inc., 408 N.E.2d 1370, 1376-77 & n.13 (Mass.

1980)). The court cannot conclude on the record here that the terms are unreasonably favorable to one party.

"[A] provision in an insurance policy that negates the very coverage that the policy purports to provide in the circumstances where the person is liable is void as against public policy. However, if the policy still provides coverage for some acts, it is not illusory simply because of a potentially wide exclusion." Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 817 (Mass. 1999) (citations omitted). See also id. (finding that a policy was not illusory even though it excluded coverage for claims arising out of illegal acts); McGregor v. Allamerica Ins. Co., 868 N.E.2d 1225, 1228 (Mass. 2007) (holding that a policy that eliminated coverage for harm arising out of the discharge of pollutants was not illusory, even when the insured's business often involved the use of oil); B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36 (1st Cir. 2004). For example, in B & T Masonry, the court found that a policy that barred recovery for any damage to the construction project arising from the insured's own faulty workmanship was enforceable. 382 F.3d at 41. Although the First Circuit found that the appellants had not preserved for appeal the claim that the contract was illusory, the court stated that if they had, the court would find that contention without merit because the policy still provided meaningful coverage for negligent injuries to surrounding structures and passersby. Id.

The policy here is not illusory or void as against public policy simply because it has many exclusions. There are a number of events for which Price would be provided coverage even considering all of the exclusions. Atlantic Casualty notes that injuries to the homeowners, neighbors, architect, engineer, town building inspectors, deliverymen, and realtors would all be covered by the policy. In this way the policy is similar to that discussed in B & T, in that it covers injuries to a range of individuals who might be at the worksite even if not Sousa's

injuries. Finally, the policy here also covers property damage and "personal and advertising injury liability." Pl.'s Facts Ex. 5 20, 24 [#26-5]. Although these two types of damage are not at issue here, that they could be covered demonstrates that the policy as a whole is not illusory.

In sum, there is no basis to find the policy unenforceable for lack of substantial economic value.

V.    Conclusion

In light of the foregoing, the court concludes that the Employees and Contractors Endorsement excludes coverage for injuries to Sousa, and the policy does not violate public policy. Accordingly, Atlantic Casualty is entitled to summary judgment and a declaration that it has no duty to defend or indemnify Price for damages alleged by Sousa in Sousa's negligence lawsuit. Atlantic Casualty's Motion for Summary Judgment [#24] is ALLOWED.

IT IS SO ORDERED.

Date:  July 26, 2016                                    /s/ Indira Talwani
                                                       United States District Judge